1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DAVID PRIEST,                           No. CIV S-07-1186-JAM-CMK-P

12                    Petitioner,

13         vs.                              FINDINGS AND RECOMMENDATIONS

14   D.K. SISTO,

15                    Respondent.

16   _____/

17              Petitioner, a state prisoner proceeding with appointed counsel, brings this petition

18   for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the 2006 denial

19   of parole decision.  Pending before the court are:  Petitioner's petition for writ of habeas corpus

20   (Doc. 1), Respondent's response to the petition (Doc. 8), Petitioner's traverse (Doc. 9),

21   Respondent's supplemental brief (Doc. 11), Petitioner's supplemental brief (Doc. 12),[1]

22   Petitioner's second supplemental brief (Doc. 21), Respondent's second supplemental brief (Doc.

23   _____

24         [1]     The supplemental briefs were filed pursuant to the court's request that each party
     file a brief discussing the effect, if any, the original Ninth Circuit panel decision in Hayward v.
25   Marshall, 512 F.3d 536 (9th Cir. 2008), would have on this case.  The panel decision in Hayward
     was thereafter vacated, and the case was heard en banc.  Therefore, the relevant case, as
26   discussed below is the en banc opinion, 603 F.3d 546 (9th Cir. 2010).

23), Petitioner's second traverse (Doc. 24), Petitioner's motion for discovery (Doc. 25),

Petitioner's motion to expand the record (Doc. 25), Respondent's oppositions thereto (Docs. 27,

28), and Petitioner's replies thereto (Docs. 29, 30).

## I. BACKGROUND

Petitioner is serving an indeterminate life sentence for a conviction of second-

degree murder.  Petitioner appeared at a parole suitability hearing in June 2006, at which time he

was represented by counsel.  In denying parole, the Board of Prison Terms ("Board") stated:

> Your prior record, although (indiscernible) demonstrate an
> escalating pattern of conduct, your prior offenses remain property
> offenses, and alcohol, and drug offenses.  So there's no really prior
> record of violence.  It appears what this case illustrates is drugs are
> a dirty business.  (Indiscernible) do bad things to people with those
> that come in contact with them.  And it is apparent that this crime
> came as a result of drug activities that you were involved in at the
> time.  And thus, the primary reason for our concern in your denial
> today, although in many ways you've been an ideal inmate, you've
> been relatively disciplinary-free, you've programmed well, this 115
> in 2000 is disturbing to us.  Your  history - - Your criminal history
> relates to the abuse of drugs.  This crime relates to the abuse of
> drugs.  Everything that you have done in a programming sense, it's
> discounted when we see that 115.  We think it is important that you
> continue to demonstrate that - - we understand that you deny
> culpability in that offense, but we're required to accept as true
> those findings, and it's important that you continue by your
> conduct to distance yourself from that 115.  So we really have no
> other comments other than to continue along the line that you are
> traveling.  You appear to have viable parole plans.  You've
> programmed well.  But for that disciplinary-free, you would have
> been given serious consideration today.  We have considered the
> psychological report, the input from the District Attorney, and the
> input from the victims.  . . .

Petitioner challenged the decision with a petition for writ of habeas corpus filed in

the San Joaquin County Superior Court.  In denying relief, the court stated:

> The transcript of the hearing reveals that petitioner's prior
> criminality, including the life crime, all involved the abuse of
> illegal drugs or alcohol.  Petitioner admits that he had been using
> methamphetamine before the murder.  In 2000, while incarcerated
> at Folsom Prison, petitioner was found guilty of a rules violation
> involving methamphetamine.  While petitioner denies that he was,
> in fact, guilty of the violation, a 115 issued and a finding of guilt

1      was made.  The panel indicated its concern with this 115 given the
2      circumstances surrounding the life crime and petitioner's prior
     offenses.  It therefore denied parole for one year and
3      recommended, among other things, that petitioner remain
     disciplinary free.  The rules violation report constitutes "some
4      evidence" and is sufficient to uphold the Board's decision.

5 The California Court of Appeals and California Supreme Court both summarily denied relief.

6                      **II.  STANDARDS OF REVIEW**

7         Because this action was filed after April 26, 1996, the provisions of the

8 Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively

9 applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.

10 (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA

11 does not, however, apply in all circumstances.  When it is clear that a state court has not reached

12 the merits of a petitioner's claim, because it was not raised in state court or because the court

13 denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

14 habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.

15 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach

16 petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208

17 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on

18 perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the

19 evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

20 petition de novo where state court had issued a ruling on the merits of a related claim, but not the

21 claim alleged by petitioner).  When the state court does not reach the merits of a claim,

22 "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

23         Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

24 not available for any claim decided on the merits in state court proceedings unless the state

25 court's adjudication of the claim:

26 / / /

1
2
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3
4
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5 Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

6 "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

7 standards, "clearly established law" means those holdings of the United States Supreme Court as

8 of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

9 (citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not

10 the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

11 banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas

12 relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,

13 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

14 For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

15 to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

16 state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

17 contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

18 created by state conduct at trial because the Court had never applied the test to spectators'

19 conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

20 holdings.  See Carey, 549 U.S. at 74.

21     In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

22 majority of the Court), the United States Supreme Court explained these different standards.  A

23 state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

24 the Supreme Court on the same question of law, or if the state court decides the case differently

25 than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

26 court decision is also "contrary to" established law if it applies a rule which contradicts the

governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

that Supreme Court precedent requires a contrary outcome because the state court applied the

wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

State court decisions are reviewed under the far more deferential "unreasonable

application of" standard where it identifies the correct legal rule from Supreme Court cases, but

unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

that federal habeas relief may be available under this standard where the state court either

unreasonably extends a legal principle to a new context where it should not apply, or

unreasonably refuses to extend that principle to a new context where it should apply.  See

Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

decision is not an "unreasonable application of" controlling law simply because it is an erroneous

or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous.

See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.

As with state court decisions which are "contrary to" established federal law, where a state court

decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

# III. DISCUSSION

Petitioner argues that the Board's decision was not based on some evidence of his current dangerousness, but rather was arbitrary and capricious.  Specifically, he argues there is no evidence in the record to support the Boards decision or the finding of unsuitability, especially where he meets eight of the nine circumstances tending to show suitability.  He also argues the Board failed to consider those relevant suitability factors.   In addition, Petitioner moves the court to allow discovery and to expand the record.  Petitioner claims the discovery is necessary to obtain a copy of the Board's formal or informal policy relating to the use of rules violation reports in determining parole suitability and a copy of an investigation report from the San Joaquin District Attorney's Office.  Petitioner's request to expand the record is for the purpose of including in the record the investigation report, as well as supportive letters and declarations.

Respondent argues that Petitioner does not have a federally protected liberty interest in parole, and that even if the "some evidence" standard applies, the factors cited by the Board and state court meet this standard.  In response to Petitioner's request for discovery, Respondent argues no good cause has been shown, disputes the existence of any formal or informal policy regarding consideration of rules violation reports, and argues any investigation by the San Joaquin District Attorney (who is not a party to this action) occurred after the 2006 parole hearing and would have no bearing on the review of the decision.  Respondent also contends the court should deny the motion to expand the record because the documents referred to were not part of the state court record and bear no relation to the parole consideration decision at issue.

Rule 6(a) of the Federal Rules Governing Section 2254 cases states "[a] judge may, for good cause, authorize a party to conduct discovery . . . ."   Rule 7 allows the court to expand the record though the submission of additional materials relating to the petition.

In Hayward v. Marshall, the Ninth Circuit sitting en banc held that there is no federal stand-alone substantive due process right to parole.  See 603 F.3d 546, 555 (9th Cir.

1  2010) (en banc).  Any substantive due process interest in parole arises solely from state law

2  creating the right.  See id.  The Ninth Circuit overruled its prior decisions in Biggs v. Terhune,

3  334 F.3d 910, 915 (9th Cir. 2003), Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006),

4  and  Irons v. Carey, 505 F.3946, 851 (9th Cir. 2007), "[t]o the extent [they]. . . might be read to

5  imply that there is a federal constitutional right regardless of whether state law entitles the

6  prisoner to release . . . ."  Hayward, 603 F.3d at 555.

7          Turning to whether California's parole scheme creates any substantive due

8  process rights, the Ninth Circuit stated: "Although the due process clause does not, by itself,

9  entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law

10  may supply a predicate for that conclusion."  Id. at 561.  The court then discussed California law,

11  including the California Supreme Court's decisions in In re Lawrence, 44 Cal.4th 1181 (2008),

12  and In re Shaputis, 44 Cal.4th 1241 (2008), and noted that "as a matter of state law, 'some

13  evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in

14  California."  Id. at 562.  The court then provided the following instructions for resolving parole

15  claims in the context of AEDPA:

16          Since the "some evidence" requirement applies without regard to
          whether the United States Constitution requires it, we in this case, and

17          courts in this circuit facing the same issue in the future, need only decide
          whether the California judicial decision approving the . . . decision

18          rejecting parole was an "unreasonable application" of the California "some
          evidence" requirement, or was "based on an unreasonable determination of

19          the facts in light of the evidence."

20          Id.

21  The en banc court concluded that Hayward had properly been denied parole because the nature of

22  the commitment offense combined with an unfavorable psychological evaluation provided "some

23  evidence" under California law of future dangerousness.  See id.

24          Interpreting the en banc decision in Hayward, the Ninth Circuit in Person v.

25  Muntz stated: "By holding that a federal habeas court may review the reasonableness of the state

26  court's application of the 'some evidence' rule, Hayward, necessarily held that compliance with

1   the state requirement is mandated by federal law, specifically the Due Process Clause."  606 F.3d

2   606, 609 (9th Cir. 2010) (per curiam).  The court observed that "[t]he principle that state law

3   gives rise to liberty interests that may be enforced as a matter of federal law is long-established."

4   Id.

5          As has been clearly stated by the Ninth Circuit, California law provides the

6   contours of the substantive due process right to parole at issue in this case.  Under California law,

7   one year prior to an inmate's minimum eligible parole release date, the Board will set a date for

8   an eligibility hearing.  See Cal. Penal Code § 3041(a).  A release date shall be set unless release

9   currently poses an unreasonable risk of danger to society.  See Cal. Penal Code § 3041(b).  The

10  paramount concern in determining parole suitability in California is public safety.  See In re

11  Dannenberg, 34 Cal.4th 1061 (2005).  This requires an assessment of the inmate's current

12  dangerousness.  See In re Lawrence, 44 Cal.4th at 1205.  Such an assessment requires more than

13  "rote recitation of the relevant factors with no reasoning establishing a rational nexus between

14  those factors and the necessary basis for the ultimate decision – the determination of current

15  dangerousness."  Id. at 1210.

16         California regulations set forth various circumstances which tend to show

17  suitability and others which tend to show unsuitability.  See Cal. Code Regs., tit 15 § 2402(c)-(d).

18  Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the

19  commitment offense, where the offense was committed in an especially heinous, atrocious, or

20  cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable

21  relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of

22  severe mental problems related to the offense; and (6) serious misconduct while in prison.

23  Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably

24  stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant

25  history of violent crimes; (5) realistic plans for release; and (6) participation in institutional

26  activities indicating an enhanced ability to function within the law upon release.  See Cal. Code

8

1    Regs., tit. 15 § 2402(d).  The regulations are designed to guide the Board's assessment regarding

2    whether the inmate poses an "unreasonable risk of danger to society if released from prison," and

3    thus whether he or she is suitable for parole.  In re Lawrence, 44 Cal.4th at 1202.  There must be

4    a rational nexus between the facts cited by the Board and the ultimate conclusion on

5    dangerousness.  See id. at 1227.

6            Regarding reliance on the facts of the commitment offense, the denial of parole

7    may be predicated on the commitment offense only where the Board can point to factors beyond

8    the minimum elements of the crime that demonstrate that, at the time of the suitability hearing,

9    the inmate will present an unreasonable risk of danger to society if released.  See In re

10   Dannenberg, 34 Cal.4th at 1071.  While the Board cannot require an inmate to admit guilt in

11   order to be found suitable for parole, see Cal. Penal Code § 5011(b); 15 Cal Code Regs., tit. 15,

12   § 2236, the Board must consider the inmate's past and present attitude toward the crime and any

13   lack of remorse or understanding of the nature and magnitude of the offense, see 15 Cal. Code

14   Regs., tit. 15, §§ 2402(b), 2402(d)(3).  "Lack of insight" is probative of unsuitability only to the

15   extent that it is both demonstrably shown by the record and rationally indicative of the inmate's

16   current dangerousness.  See In re Calderon, 184 Cal. App. 4th 670, 690 (2010).

17           In light of the precedents outlined above the court concludes that petitioner has a

18   protected liberty interest in parole arising from state law.  The court also concludes that the

19   contours of the substantive guarantee required to protect that liberty interest are defined by state

20   law and that under California law parole may not be denied unless there is "some evidence" of

21   the inmate's dangerousness at the time of the parole eligibility hearing.  Respondent's arguments

22   to the contrary are rejected.

23           Applying the "some evidence" standard to the facts of this case, the court finds

24   that the state court's decision was neither an unreasonable application of that test nor based on an

25   unreasonable determination of the facts.  As set forth above, the San Joaquin County Superior

26   Court denied Petitioner's habeas petition stating "The panel indicated its concern with this 115

given the circumstances surrounding the life crime and petitioner's prior offenses. . . . The rules violation report constitutes 'some evidence' and is sufficient t o uphold the Board's decision."

The undersigned notes that the Board acknowledged Petitioner's institutional behavior had been good, with the exception of the 2000 disciplinary, noting that in many ways Petitioner had been an ideal prisoner, and that Petitioner had programmed well, had viable parole plans, and a positive psychological report. However, the Board was very disturbed by the disciplinary in 2000, wherein Petitioner was found guilty of possession of methamphetamine, as it was significantly related to the commitment offense as well as Petitioner's prior history as all of those offenses were related to drug and/or alcohol use or abuse. Specifically, Petitioner's commitment offense was committed while Petitioner was under the influence of methamphetamine. While Petitioner disputes his guilt relating to that disciplinary and maintains his innocence, he did not provide to the Board, the state courts or this court any showing that the disciplinary action was overturned. As the Board stated, even though Petitioner denies culpability in the offense, the Board was required to accept the findings as true.

In addition, the Board considered the facts of the crime, including the statement by Petitioner's ex-wife regarding Petitioner's state of mind at the time. Petitioner's request to expand the record to include his ex-wife's statement therefore fails to add anything to the record. The Board was aware of the facts as set forth in Ms. Bertoldi's statement, and considered them. Similarly, his request to include the investigation which occurred after the parole determination hearing would have no impact in this court's review of the decision. Petitioner acknowledges that the investigation occurred following the hearing, and fails to show how the results of that investigation would have any impact in this case. While he argues his subsequent parole determination hearings were also erroneous, those subsequent determinations are not presently before this court. The undersigned offers no opinion as to whether the District Attorney's investigation would be admissible or relevant in relation to a review of any subsequent parole determination. However, as the investigation was not completed prior to the instant parole

1   consideration hearing, nor were the results of that investigation before the Board, it is not

2   relevant to the court's review of the Board's 2006 decision.  The request to conduct discovery to

3   obtain a copy of the investigation report should therefore be denied.

4             Petitioner also requests discovery in order to obtain information regarding any

5   formal or informal policy the Board has as to what consideration is given to a rules violation

6   report.  In support of his request, Petitioner points to a 2007 Board decision wherein the Board

7   stated to him: "It's commonly agreed by most commissioners that a five-year rule of having five

8   years between and you the (sic) 115 is a good indicator and I think you'll generally find that most

9   commissioners would use that."  This statement was made not at the hearing currently before the

10  court, but at a subsequent hearing.  However, even if it was relevant to the court's review of the

11  current decision, the undersigned is not persuaded that such a policy would render the Board's

12  decision arbitrary, as Petitioner contends.  Petitioner argues the above quoted statement indicates

13  the existence of either a formal or informal policy that after five years, a rules violation report

14  would have no impact on a prisoner's parole suitability.  The undersigned is not persuaded.

15  According to Petitioner, the commissioner stated that it is "commonly agreed by most

16  commissioners" that a disciplinary action older than five years "is a good indicator . . . ."  Even if

17  most commissioners believe that after five years a disciplinary action has less impact, that does

18  not eliminate the duty of the Board to make a determination as to each prisoner's suitability for

19  parole, including each prisoner's current level of dangerousness.  It also does not diminish the

20  finding by the current Board that because Petitioner's disciplinary action was related to drugs,

21  and his commitment offense was related to drugs, it tends to show unsuitability.  It is the Board's

22  duty to weigh the evidence before it in determining parole suitability.  Therefore, even if there is

23  a policy that five year old disciplinary actions would have less of an impact, that does not

24  diminish the Board's finding in this case that a six year old disciplinary action negatively impacts

25  Petitioner's suitability, especially where the disciplinary action relates to the same type of

26  circumstances involved in the commitment offense, such as the use and/or possession of drugs.

The existence of such a policy is therefore immaterial to this court's review of the Board's determination, and the request to conduct discovery to obtain proof of such policy should be denied.

## IV.  CONCLUSION

The undersigned finds that state court's decision is neither contrary to nor an unreasonable application of clearly established United States Supreme Court law.

Based on the foregoing, the undersigned recommends that:

    1.    Petitioner's petition for a writ of habeas corpus (Doc. 1) be denied;

    2.    Petitioner's motion for discovery (Doc. 25) be denied; and

    3.    Petitioner's motion to expand the record (Doc. 26) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   September 29, 2010

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

12